Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3932 | **DATE** | 9/8/2003 |
| **CASE TITLE** | States of Illinois & Washington vs. National Steel Corp., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order: The States of Illinois and Washington appeal an order issued by the U.S. Bankruptcy Court for the Northern District of Illinois exempting Appellees, National Steel Corporation, et al from payment of taxes on certain asset sales. For the reasons set forth, we reverse the decision of the Bankruptcy Court and order that National Steel pay tax on any transfer of assets made prior to entering into a formal reorganization plan. The status hearing set for 9/11/03 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 0 9 2003 | 12 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | | 9/8/2003 | |
| GL | courtroom deputy's initials | 03 SEP -8 PM 3:20 | date mailed notice GL | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STATES OF ILLINOIS & WASHINGTON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 03 C 3932 |
| | ) | |
| NATIONAL STEEL CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

MARVIN E. ASPEN, District Judge.

The States of Illinois and Washington (hereinafter "the States") appeal an order issued by the U.S. Bankruptcy Court for the Northern District of Illinois exempting Appellees, National Steel Corporation, et al. (hereinafter "National Steel") from payment of taxes on certain asset sales. For the reasons set forth below, we reverse the decision of the Bankruptcy Court and order that National Steel pay tax on any transfer of assets made prior to entering into a formal reorganization plan.

### BACKGROUND

National Steel filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Illinois on March 6, 2002. At that time, the steel industry was dealing with "the worst steel market in twenty years" and market experts predicted that the price of steel would continue to drop. (Brief for Appellee at 3.) National Steel wished to sell its assets as early as possible so that they could minimize the potential harms associated with falling steel prices. It therefore sought and was granted permission by the Bankruptcy Court to sell substantially all of National Steel's assets for over $1 billion. This sale took place not as a part of a formal reorganization plan, but pursuant to 11 U.S.C.

§ 363(b) which allows a court to authorize the sale of assets prior to official Chapter 11 plan confirmation.

The Bankruptcy Court subsequently entered a Minute Order amending its Sale Order of April 21, 2003 declaring the asset sale exempt from taxation pursuant to 11 U.S.C. § 1146(c) (hereinafter § 1146(c)) provided that the parties ultimately confirm a reorganization plan. *In re National Steel et al.*, No. 02-08697 through 02-08738, 2-3 (Bankr. N.D. Ill. May 19, 2003). The Bankruptcy Court further ordered that National Steel place the amount of taxes exempted into an interest-bearing escrow account. If National Steel ultimately confirmed a plan, the Bankruptcy Court ordered that the amount in escrow would go to National Steel; if the parties failed to confirm a plan, the amount in escrow would go to the taxing authorities. *Id.* The States subsequently appealed the Order exempting the pre-confirmation sales from taxes under § 1146(c). We now reverse.

## DISCUSSION

### I. STANDARD OF REVIEW

Neither party to this appeal challenges the facts contained in the record below; rather, the major issue in this case is one of statutory interpretation. Because this is a determination of law rather than a question of fact, this Court will look at the Bankruptcy Court's findings *de novo*. *See In re Vlasek*, 325 F.3d 955, 960 (7th Cir. 2003).

### II. ANALYSIS

This appeal presents us with a question of statutory interpretation that has been the subject of debate in several circuits, but which has never been directly ruled upon by the Seventh Circuit. The relevant language of § 1146(c) provides that, "[t]he issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer *under a plan confirmed* under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax" (emphasis added). The controversy

surrounds the language of § 1146(c) and specifically the phrase, "under a plan confirmed." National Steel argues that the sale of its assets made prior to plan confirmation should be deemed a transfer made "under a plan confirmed" because "the asset sale was clearly central and necessary to the plan's success." (Brief for Appellee at 4.) The States, on the other hand, argue that the language should be interpreted to mean that National Steel is only exempt from taxation for asset transfers made subsequent to plan confirmation.

### A. Plain Language of § 1146(c)

The States argue that their interpretation of § 1146(c) is supported by the plain language of the statute. They interpret the word "under" to mean "subordinate to" or "authorized by" and thus conclude that the tax exemption cannot apply unless there is first a confirmed plan. This was the position taken by both the Fourth Circuit and the Third Circuit when presented with the meaning of § 1146(c). In *In re NVR*, the Fourth Circuit defined the word "under" as meaning, "inferior" or "subordinate" and concluded that "a transfer made prior to the date of plan confirmation could [not] be subordinate to, or authorized by, something that did not exist at the date of transfer." 189 F.3d 442, 457 (4th Cir. 1999) (citing *Black's Law Dictionary* 1525 (6th ed. 1990)). More recently, the Third Circuit used the same interpretation of the word "under" in concluding that the language of § 1146(c) is unambiguous. *In re Hechinger Inv. Co.*, 335 F.3d 243, 252 (3d Cir. 2003). We agree with both the Third and the Fourth Circuits and find that the language of § 1146(c) is unambiguous in that it only applies to transfers made after a plan has been confirmed.[1]

---

[1] In concluding that § 1146(c) only applies to post-confirmation transfers, we are in agreement with the only two U.S. Courts of Appeals that have decided this matter. When faced with this exact question, both the Third and Fourth Circuits declined to extend the tax exemption to pre-confirmation transfers. Notwithstanding these precedents, National Steel points to a decision of the Second Circuit in arguing that there is no clear persuasive authority on the matter. In *In re Jacoby-Bender*, the Second Circuit held that the tax exemption provided for in § 1146(c) does apply to transfers that take place *after* the confirmation of a plan but which are not specifically mentioned in

National Steel asserts in its brief that the word "under" is subject to multiple interpretations, not all of which imply a "temporal element." (Brief for Appellee at 9); *see also NVR*, 189 F.3d at 458 (Wilkinson, J., concurring). Citing several alternative definitions of the word, including, "in accordance with," "subject to the authority of," and "warranted by," National Steel argues that not every definition of the word "under" suggests that a plan must be confirmed for § 1146(c)'s tax exemption to apply. While it is true that the word "under" is used in a myriad of contexts, all of the alternative definitions presented by National Steel are dependent upon the existence of some plan. In fact, we fail to see *any* alternative definition that would support National Steel's argument. Webster's Dictionary includes the following possible definitions of the word "under:" "inferior to in rank or status;" "subject to the authority, rule, or control of;" "subject to the supervision, instruction, or influence of;" "subject to the restraint or obligation of;" "in the process of;" and "with the authorization of." *Webster's II New Riverside University Dictionary* 1256 (1984). With each of these definitions, a plan must be in existence in order for the tax exemption to apply. For example, it is difficult to comprehend how a sale could be made "in accordance" with a plan that has not yet been created. Likewise, it is impossible for a plan to "authorize" anything if it does not exist.

We are mindful that the word "under" does not appear in the statute standing alone, but in the context of the phrase "under a plan *confirmed*." The word "confirmed" in that phrase makes explicit Congress' intent that a plan must be officially confirmed before § 1146(c)'s tax exemption will take effect. National Steel's alternative definition would have us read the word "confirmed" out of the statute entirely, something which we clearly cannot do. In short, National Steel has failed to present an

---

the plan. Although this case is clearly not on point, National Steel cites several district court cases that rely on the *Jacoby-Bender* decisions in concluding that § 1146(c) applies to *pre*-confirmation transfers. *See, e.g., In re Linc Capital, Inc.*, 280 B.R. 640, 646 (Bankr. N.D. Ill. 2002). We find this argument unconvincing. The fact is that the Second Circuit has not directly addressed the question before us, while the Third and Fourth Circuits both have.

alternative definition of the word "under" that would *not* imply a temporal element. We thus find that under the plain meaning of § 1146(c), a plan must be established before the provision's tax exemption applies.

B.   **Congressional Purpose**

There is no need for us to consider the Congressional purpose behind the enactment of § 1146(c) because we have determined that the contested wording is unambiguous. Even if we had found the phrase "under a plan confirmed" to be ambiguous, however, we would still find for the States because we are convinced that Congress intended to exempt only post-confirmation transfers in the statute. *See Swarts v. Hammer*, 194 U.S. 441 (1904) (looking to Congressional intent in assessing whether a provision of the federal bankruptcy laws exempts a debtor from state taxation).

We are guided in our opinion by strong Supreme Court precedent. It is a well settled rule that "[a] court must proceed carefully when asked to recognize an exemption from state taxation that Congress has not clearly expressed." *California State Bd. of Equalization v. Sierra Summit, Inc.*, 490 U.S. 844, 851-52 (1989) (*citing Rockford Life Ins. Co. v. Illinois Dept. of Revenue*, 482 U.S. 182 (1987)). This rule extends back almost 100 years to the Supreme Court's decision in *Swarts v. Hammer* and remains good law today. 194 U.S. 441, 444 (1904) (finding that a statute did not exempt a bankruptcy trustee from the payment of taxes, the court stated that, "[i]f Congress has the power to declare otherwise, and wished to do so, the intention would be clearly expressed, not left to be collected or inferred from disputable considerations of convenience in administering the estate of the bankrupt."). Thus, even if we found § 1146(c) to be ambiguous, clear Supreme Court precedent dictates that we must adopt the more narrow reading of the statute. Congress was on notice that this rule existed when it enacted § 1146(c) in 1978 and could have made an intention to exempt pre-confirmation transfers explicit had it wished to do so.

National Steel argues that, as a matter of statutory interpretation, where Congress wished to include a temporal element in a statute, it did so expressly. For example, the dissenting opinion in the *Hechinger* case cites a provision of the Bankruptcy Code which orders that the court appoint a trustee in bankruptcy cases "[a]t any time after the commencement of the case but before confirmation of a plan." *See In re Hechinger Inv. Co.*, 335 F.3d 243, 259 (3d Cir. 2003) (citing 11 U.S.C. § 1104(c)). The *Hechinger* dissent also states that had Congress intended to include a temporal restriction in § 1146(c), the restriction would have been made expressly, using language such as: "'under a plan *that was* confirmed under § 1129' or 'under a plan that *will be* confirmed under § 1129.'" *Id.* at 257 (emphasis added). While we agree that section § 1146(c) could have been made even more clear by adding the quoted language, we think, as discussed above, that the meaning of § 1146 is unambiguous and thus does not require additional words. Furthermore, while other provisions within the Bankruptcy Code may provide some guidance on statutory interpretation where there is little other evidence of Congress' intent, the clear precedent directing courts to read tax exemptions narrowly should control our reading of the statute. This clear precedent trumps any inferences that we would otherwise draw from the rest of the Bankruptcy Code. We thus find that the Congressional intent in drafting § 1146(c) was to exempt only post-confirmation transfers.

We next turn to a discussion of the legislative history of § 1146(c). National Steel and the States both argue that the legislative history supports its respective side. We find the legislative history to be inconclusive. The House Judiciary Committee Report on § 1146(c) tells us only that the section is "modeled after Section 267 of the Bankruptcy Act." H.R. Rep. No. 595, 95th Cong. 1st Sess. 281 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6238. The language of § 267 is, in turn, almost identical to that of § 1146(c), except that § 1146(c) expands the exemption to "any law imposing a stamp tax or similar tax" rather than "any stamp taxes now or hereafter imposed under the laws of the United States

-6-

or of any State." This expanded language deals only with the *type* of taxes exempted rather than the time at which the exemption applies and thus does not shed any light on the issue in this case.

The parties also point to the language of § 77B(f) of the Bankruptcy Act of 1934. Section 77B(f) was the predecessor to § 267 of the Bankruptcy Act (which, in turn, was the predecessor to § 1146(c)) and exempted transfers "*to make effective* any plan of reorganization confirmed under the provisions of this section." Bankruptcy Act of 1934, 48 Stat. 911, 919 (1934) (emphasis added). Each side quotes the language, "to make effective" in supporting its respective position. National Steel argues that "to make effective" also means "to bring about," and thus can be construed to mean that transfers necessary to bring about the confirmation of a plan should be tax exempt. (Brief for Appellee at 20) (citing *Black's Law Dictionary* 533 (7th ed. 1999)). We believe that this interpretation is flawed. First, *Black's Law Dictionary* does not define the phrase, "to make effective" as meaning "to bring about." Rather, it defines the verb, "to effect" as meaning "to bring about." *See Black's Law Dictionary* 533 (7th ed. 1999). The phrase "to make effective" has a completely different meaning as the phrase "to effect" and thus the definition of one has no bearing on the definition of the other. Furthermore, National Steel's interpretation once again reads the word "confirmed" out of the statute. Section 77B(f) did not simply exempt transfers to "make effective any plan of reorganization;" rather it exempted transfers necessary to "make effective any plan of reorganization *confirmed*." Just as with the language of § 1146(c), the inclusion of the word "confirmed" in § 77B(f) suggests that Congress intended the tax exemption to apply only to transfers after the confirmation of a formal plan.

Overall, however, we determine that the phrase "to make effective" supports the States' argument either. The States argue that the language, "confirms that the purpose of the exemption is to facilitate the implementation of a confirmed plan." (Opening Brief for Appellant at 10.) Although we do not disagree with this interpretation, the phrase as used in § 77B(f) is basically synonymous with the

-7-

word "under" as used in the present statute. Thus, it sheds no additional light on the meaning of the word "under" beyond what we have already determined. We have no evidence from the Congressional Record that Congress changed the phrase out of any desire to alter the meaning of the statute nor do we have any indication outside of the plain language of the statute of what Congress intended when it used the phrase "to make effective." We thus find the legislative history to be inconclusive on the issue before us.

Finally, National Steel argues that the general policy considerations behind the adoption of the Bankruptcy Act support its interpretation of § 1146(c). Once again, we find that because the language of the statute is unambiguous, we cannot allow policy implications to sway our judgment. We take no issue with the fact that one of the purposes behind the enactment of the Bankruptcy Code "is to facilitate successful Chapter 11 reorganizations." (Brief of Appellees at 13-14). We are not unsympathetic to the fact that National Steel felt it had to sell its assets at the earliest possible moment because of rapidly declining steel prices. We understand that waiting until a plan had been fully confirmed could have cost National Steel money and may have hindered its efforts to remain a going concern. We also understand that the policy implications of forcing companies like National Steel to wait to sell assets could include a loss of jobs and a valuable source of community income.

There are equally valid policy arguments that support the States' position. For example, the States point out in their brief that "in most cases where a debtor must move quickly to sell its assets prior to plan confirmation in order to stop financial losses, successful reorganization is unlikely," and plans are rarely confirmed in the end. (Reply Brief for Appellant at 8.) The State also argues that "one of the goals of the [Bankruptcy] Code is to encourage early confirmation," and that allowing an exemption prior to confirmation would refute that goal. (Reply Brief for Appellant at 9.)

In the end, all of these arguments are policy matters for Congress; they are not for a court to decide. Congress has spoken plainly in § 1146(c) and it is our job to enforce its wishes in such matters. We are guided in this decision by clear Seventh Circuit precedent regarding the role of courts in interpreting Bankruptcy Statutes. The court in *In re Stoecker* made clear that, "[b]ankruptcy is not a 'free-for-all equity balancing act' . . . It is a forum in which creditors prove the entitlements that state or federal law confers on them, and these entitlements are then enforced consistently with the provisions of the Code." 179 F.3d 546, 551 (7th Cir. 1999). Likewise, the Seventh Circuit has clearly stated that while Bankruptcy Courts have some equitable power, "a court may exercise its equitable power only as a means to fulfill some specific code provision. . . [and] when a specific Code section addresses an issue, a court may not employ its equitable powers to achieve a result not contemplated by the Code." *In re Fesco Plastics Co., Inc.*, 996 F.2d 152, 154 (7th Cir. 1993). In short, we cannot allow equity to intervene when Congress has made its intent clear, and we believe that Congress made its intent clear in drafting § 1146(c).

## CONCLUSION

For the foregoing reasons, we reverse the decision of the Bankruptcy Court and order that Appellees be required to pay all tax, including interest, on the transfers it made pursuant to § 363(b). It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated 9/8/03